LUIS SANCHEZ MORALES

*v.*

SAN JUAN LIGHT & TRANSIT COMPANY.

Law, No. 569.

1. In Porto Rico the right of a parent to recover damages for death, through the negligent act of a defendant, of a minor child, is, under the law, based upon the lack of support of the parent by the minor, and because of being deprived of the society and companionship of the child. To this, of course, can be added the cost and expense of the medical treatment, if any, before the death. Mental anguish of the parent, as such, is not an element of damage.

Morales v. San Juan Light & T. Co.

2. Where the view in front and to the right and left of a residence is obstructed by the fence, trees, and shrubbery, and a street car track is located immediately outside the fence, where the sidewalk would ordinarily be, both the plaintiff and the defendant street car company are bound to exercise extraordinary care to avoid accidents.

3. Contributory negligence being the proximate cause of an injury defeats the right of recovery.

4. He that has the last clear chance to avoid an accident that results in personal injury, and fails to do so, is guilty of negligence that is the proximate cause thereof.

5. When a plaintiff is riding in a hired public carriage, with its own driver, but which is under the complete control and direction of such plaintiff, the negligence of such driver can be imputed to such plaintiff; but *per contra* when the carriage is not under plaintiff's complete control.

6. A plaintiff sitting on the front seat of a public hack with the driver, and having equal opportunity to know or to see danger, is equally bound with the driver to exercise all proper care and prudence to avoid the same.

7. Where the track of an electric car line runs along the side of a street close to the fences, trees, and shrubbery in front of residences, the owners of such car line are bound to exercise extraordinary care to avoid injuring people that might suddenly come out through the gateways in front of such cars, and must keep proper brakes and other appliances on such cars, so as to be able to stop them within a reasonable distance.

Case tried December 9, 1908.

---

*Messrs. Hartzell & Rodriguez Serra,* attorneys for plaintiff.

*Mr. Henry F. Hord,* attorney for defendant.

Instructions by RODEY, Judge:

The following is a synopsis of the facts as shown by the evidence in this case:

Plaintiff, with his wife, sister-in-law, and a driver, on the

Morales v. San Juan Light & T. Co.

afternoon the accident occurred, left San Juan, drove out to Santurce, and visited the residences of several friends, driving from house to house during the late afternoon. For more than a mile along the main east and west street of Santurce defendant's car track runs within a foot or two of the picket, stone, board, iron, or other fences that front the residences on the south side of the track. Vegetation is so luxuriant that the trees, shrubbery, tall grass, etc., grow thickly immediately inside of all the fences. Most of the residences stand back from the front fences from a few feet to 40 or 50 feet or more. The street car track is elevated from a few inches to a foot or more above the main road, which parallels it on the north. Most of the residences have two gateways, one from the front entrance, for the family when on foot, and another one, usually at the side of the lot, which is used as a carriage driveway. Street cars approaching the residence where the accident occurred go up over a steep grade, and, when they arrive at the top of it, they are a hundred yards west of the residence where the accident occurred. From this point the motorman can see forward about 100 yards to the gateway where the accident occurred, and nearly another 100 yards beyond it; but it is impossible for him to see into any of these front yards, owing to the closeness of the fences to the track, and the density of the foliage of the trees, vines, shrubbery, etc. Neither can people about to come out from any of these residences, particularly the one in question, on the driveway, see to the right or the left any distance, until they advance outward almost to the gates, and even then, they can only see distinctly a few feet each way, and cannot see any considerable distance either way until they actually come outside of the fence, where the view is unobstructed. From the evidence it appeared

that the carriage used was a public conveyance or surrey, hired on the street in San Juan by plaintiff for the trip, in order to make these calls with his family. The driver testified that during the trip he was subject to the orders of plaintiff as to where to go, etc. When the family got into the carriage to come out from the residence in question, plaintiff asked the driver if the street car had passed. The driver answered that the Rio Piedras car had just passed. From the evidence it appeared that it was well known to both the driver and plaintiff, that it was customary for two cars to travel immediately following each other on defendant's line, the Rio Piedras car being the rear one; therefore when the driver said he had seen the Rio Piedras car pass, plaintiff told him to go ahead, believing that no other car would come along for many minutes. It transpired that the day previous defendant company had changed the order of running its cars, so that the Rio Piedras car preceded the park car. This fact was not known to the driver or plaintiff. At this time the carriage stood 20 feet or more within the driveway from the gate, and plaintiff was sitting on the front seat, opposite the driver. They proceeded forward, and were struck by a car going at what the evidence tended to show was a high rate of speed. The evidence also tended to show that the brakes on the car were in very bad order, and that, for this reason, the car was not stopped until it had gone a couple of hundred feet past the scene of the collision. This was disputed but the weight of the evidence tended to establish it. The evidence further tended to show that the motorman did not see the horses or the carriage coming out from the driveway until he was within a car length of them, and that he at once did his best to avoid the accident, but without effect. In the collision plaintiff and other

Morales v. San Juan Light & T. Co.

members of the family were injured, and the child was thrown out of the carriage and caught on the fender of the street car, but rolled off and was run over and injured so severely that he died in a few hours. The horses were not injured, but became disentangled from the surrey and ran away. The surrey was thrown into the main road, but carried forward a short distance from the place of the collision.

Rodey, Judge, gave the following instructions to the jury:

This is an action by the plaintiff for damages, which he lays in the sum of $25,000, against the defendant, for having, as he alleges, negligently caused the death of his minor son, a child of the age of four years, and which is said to have taken place at the time and in the manner as indicated in the complaint and the evidence. The fact that the plaintiff demands $25,000 damages is no reason why the jury should give him as much as that sum, or, in fact, any sum whatever, unless the evidence and the law warrant it; but it is merely a limit beyond which you cannot go in your verdict, should you find for the plaintiff, and your verdict may be for any sum, from mere nominal damages up to the amount claimed, if the evidence warrants it, or the law, as here set forth. The defendant denies absolutely and *in toto* that it is liable to the plaintiff at all; and contends that it had nothing to do with the death of plaintiff's minor son, and is in no manner liable therefor; and asserts that the same was either the result of an unavoidable accident that nobody could avoid and for which no one is liable, or else it was the result of the carelessness and negligence of the plaintiff himself, or that of the man who was driving the carriage that contained plaintiff and his family at the time of the accident.

Morales v. San Juan Light & T. Co.

It will not be denied, of course, that the accident, in and of itself, was unfortunate, and that the plaintiff is entitled to the sympathy of all good citizens because of the unfortunate occurrence and loss of his child; but that fact should not sway you one jot in his favor in this cause unless the law on the actual facts, as developed by the evidence and found by you under these instructions, warrants you in finding that the defendant is liable; and even your sympathy for the plaintiff should not aggravate the damages, because the law gives only compensatory damages to the plaintiff, and no punitive damages can be recovered, or any damages in the nature of "smart money," as, under the evidence here, no malice on the part of this defendant in and about the case has been shown.

You are further instructed that the parties have exactly equal rights before the court of which you are a part, and that neither the prominence of the plaintiff nor the fact that the defendant is a corporation should have the least effect in your deliberations, or in the rights of the parties, or in the amount of damages, or as to your desire to find one way or the other in the case.

You are further instructed that the death of the child is the only question before you now, and you are not to consider for any purpose of the liability or nonliability of this defendant or the assessment of damages, the fact as to whether or not the plaintiff himself or any other member of his family than the child may or may not have been injured on the occasion referred to in the evidence.

The law in Porto Rico regarding this sort of a case is peculiar in that the right to recover at all on the part of the father of a minor child is based upon the future loss of services of the child to the father during the child's minority, and upon the expenses

to which the father may have been put in and about the medical services and attendance he was obliged to pay on account of the child, because of the act of the defendant, and upon the lack of support of the father by the child if the father should be dependent upon him during the child's minority, and because of the plaintiff being wholly deprived of the society and companionship of the child. It is an entirely different sort of liability than if the child was still alive and was suing through a guardian for his own injury. And, in computing damages in this sort of a case, the jury cannot look beyond these enumerated items, as a basis for their action, and, of course, in that regard, they must consider the fact that a child of tender years cannot render any services to the father, and they can only calculate the same from some later date during minority, when the child might be old enough to render any such service.

The facts in this case are such as that it cannot beforehand be stated by the court, as matter of law, either that the defendant is not liable at all, or that the defendant is liable, until you have found, by a preponderance of the evidence, the facts which create a liability or nonliability under the law, as here given to you.

You are instructed that the public and the street car company have exactly equal rights in the public streets; that each is bound to exercise due and proper care toward the other. But you are instructed that a public service corporation, using heavy cars or dangerous machinery for the service of the public, is bound to exercise care commensurate with the danger involved in the use of the implements or machinery with which it serves the public, and the failure to do this is negligence upon its part which will involve liability if it is the proximate cause of a resulting injury.

Morales v. San Juan Light & T. Co.

You are instructed that no person can recover damages for an injury inflicted upon him by another, if the person seeking such damages is guilty of contributory negligence; that is, if such person does, or fails to do, anything which a prudent and sensible person would have avoided doing or would have done, when this act or omission is what is known in law as the proximate cause of the injury; but you are further instructed that even though a person may be guilty of doing or failing to do some act that tends to bring about the injury, still, if, notwithstanding such act or omission, the defendant had what is known in law as the last clear chance to avoid doing the injury, and fails to avoid it, then such defendant is liable, and the imprudent act or omission of the plaintiff will not defeat his recovery. It is often difficult to determine just what is the proximate cause of an injury, and difficult to say who has the last clear chance to avoid the accident resulting in the injury.

You are instructed, therefore, that even though you may believe, from a preponderance of the evidence in this case, that the plaintiff was negligent in starting out of the yard and gateway of the residence in front of which the accident occurred, and that, under all the circumstances, it was his duty to have gotten out of the buggy or carriage, and to have looked to the right and left on the track before coming out, still, if you believe, from a preponderance of the evidence, that, if the motorman on the car was attending to his business, he could have seen the horses when the car was a sufficient distance away to enable him to stop it if it was supplied with proper and adequate brakes and other appliances,—then such negligence of the plaintiff in thus coming out upon the track without looking, if you believe he did so, would not in law prevent him from recovering here, and the defendant would be liable.

Morales v. San Juan Light & T. Co.

Now, in this case, there is evidence tending to show that the plaintiff hired a public hack or carriage, and, after visiting several places, finally went in through the gateway of the residence in front of which, on the return, the accident is said to have occurred. There is evidence also tending to show that the plaintiff directed this coach or hack driver to take himself and his family to the different places he visited on the trip, including the one where the accident occurred, and there is much contention between counsel in this case, as there is conflict in the law, regarding such cases, as to whether or not the negligence of this driver, if you believe, from a preponderance of the evidence, that he was guilty of negligence, can be imputed to this plaintiff. You are instructed that it is the law that ordinarily a person hiring a public hack or coach, and exercising no control over the driver of such hack or coach, save to direct him where to go, is not responsible for nor can the negligence of said driver be imputed to the person who thus hires the hack or coach. But you are further instructed that whenever a person who hires a hack or coach exercises control over the driver and requires him, for instance, to cross a track at the time a collision occurs, then the negligence of such driver can be imputed to the plaintiff to the extent to which plaintiff so controls him. And you are further instructed that there is a duty which devolves upon a plaintiff riding in a public hack or coach when such plaintiff has, owing to his position on the seat, or otherwise, equal opportunity with the driver to avoid danger, and when such plaintiff can either see or in fact knows of the existence of the danger, to avoid such danger. In other words, a plaintiff in such a case must act, even though in a public hack, as prudently as he would were he in his own private carriage, provided he can see the danger as well as the driver, or knows of it.

IV. Porto Rico—24.

You are further instructed that, in a civil case like this, a plaintiff can only recover upon a preponderance of the evidence in his favor; but this does not mean that a plaintiff must have more witnesses than the defendant to testify for him, but it means that, in your minds as reasonable men, the truth and the right between the parties, under all the facts, conditions, and circumstances of the case, must preponderate in his favor when the law, as here given you, is applied to such facts as so found.

There is also evidence in the case tending to show that the defendant did not properly conduct its street car before and at the time of the accident, and that the car was not in condition to be stopped within a reasonable distance; and there is evidence tending to show the exact contrary of this; and you must find the truth between the parties as to that from a preponderance of the evidence.

The question is submitted to you as to whether or not, under all the facts and circumstances of this case, the occurrence was what is known in law as an inevitable accident, for which the defendant cannot be held liable; but you are instructed that an unavoidable accident can only occur so as to relieve a defendant when that defendant has done everything which reasonable care and prudence would have suggested should be done to avoid such a result, and when the plaintiff is not guilty of contributory negligence which is the proximate cause of the accident. And therefore, if you believe, from a preponderance of the evidence, that the defendant in this case exercised all proper care in and about the construction and operation of its cars and the appliances thereof, and in and about the employment of competent men to put in charge thereof, and that the car was properly and prudently managed and operated at the time of the accident,

Morales v. San Juan Light & T. Co.

and that, under all the facts and circumstances, the accident was not the result of any negligence or want of care in this regard on the part of defendant, you should find a verdict in its favor.

In considering what care and caution ought to have been exercised by the plaintiff and the defendant in and around the occurrence in question, you must take into consideration the situation and position of the track, and its closeness to the shrubbery or trees, the opportunity to see approaching danger, the necessity for the plaintiff, if he knew of the danger, to have guarded against exposing himself to it, and, on the part of defendant, if its road was so situated that teams or pedestrians were liable to come suddenly in the way of its cars, the high care it was bound to exercise at the place in question, and whether or not it did so on the occasion in question. And if you believe that the parties were equally culpable, the one in exposing himself to danger, and the other in not preparing to avoid it, by having its car under proper control or for any reason, then the plaintiff cannot recover here, and you should find for the defendant. If, on the other hand, you believe, from a preponderance of the evidence and from the situation of the track, the condition of the car, the position of the trees, shrubbery, and fences, that the defendant did not exercise proper care and caution, and that the plaintiff was not guilty of contributory negligence in going upon the track, or that, if he was, and the defendant had, or ought to have had, if its car was in proper condition and under proper control, the last clear chance to avoid the injury, and did not do so, then you should find for the plaintiff, and assess his damages at such reasonable sum, not to include any punitive damages, within the amount he claims, as you, as reasonable men, believe him to be entitled to under the facts and circumstances of the case.

You are further instructed that, if you believe, from a preponderance of the evidence, that the plaintiff did not exercise proper care and caution under all the circumstances and his knowledge, if any, of the danger in going upon the track, and that his so going upon the track was in fact the proximate cause of the injury, then his own act was the cause of the injury, and he cannot recover here, and you should find for the defendant.

You are instructed that while the defendant is held to a high degree of care and caution between streets, it is not obliged to run its cars at as low a rate of speed when passing private entryways as it is when approaching street crossings.

The following instructions are requested by the defendant, and are given to you, gentlemen, as the law of this case, the same to be read and considered in connection with all the instructions here given you:

"The jury is charged that plaintiff cannot recover damages herein unless he has proved that defendant was negligent. Unless defendant, through its employees, has been guilty of negligence, and unless it has been shown that that negligence caused the death of the deceased, plaintiff cannot recover herein.

"Sounding a gong on a car is not necessary. It is only a precaution to advise persons about to cross the track of the approach of the car, and, if such persons know of the approach of the car, or could, by stopping, looking, or listening, know of its approach, and do not do so, and are injured, they cannot recover, whether the gong sounded or not.

"The jury is instructed that plaintiff cannot recover damages herein because of any mental anguish he may have suffered by reason of the loss of his son."

Just as the court is the sole judge of the law of this case, as

Morales v. San Juan Light & T. Co.

here given to you, so you are the sole judge of the weight of the evidence, and of the credibility of the witnesses; and, if you believe that any witness has wilfully sworn falsely as to any material fact in the case, you are at liberty to disregard the whole or any portion of such witness's testimony, unless the same is otherwise corroborated by other facts or circumstances in the case.

It is hoped that you will arrive at a verdict, as these trials are expensive both to the island and to the parties; but it is not intended by this remark to coerce any juror into giving up his opinion as to any fact, if he conscientiously believes that by so doing injustice would result to either of the parties; but what is meant is, that you are to deliberate together as reasonable and honest men, and that, if any juror has views of any fact or circumstance, he may give reasons to the others who may be of a different opinion, for so holding his own view, and may, by such interchange of views, either convince the others to agree with him, or that the others may be convinced by him and come to his way of thinking through honest argument. No juror has any right to interpose any knowledge he may have of this case not gained from the evidence submitted, or coming from the common knowledge of people generally as a deduction from the testimony presented. It would be unfair for any juror to interpose any such knowledge as here spoken against, as counsel would have no opportunity to cross-examine such juror.

You should not hesitate to find a verdict because of any acquaintance any of you may have with either of the parties or their managers, because that would be moral cowardice. No one has any right to ever question any of you as to your verdict. You, and you alone, are responsible under your oaths for such

verdict, and it would be an offense amounting to a contempt of court for anyone to question you for it, just as much as it would be for the court to be questioned for its action, save by a proper appeal.

Two forms of verdict will be given you, one reading, "We, the jury, find for the plaintiff, and assess his damages at the sum of $————, and the other reading, "We, the jury, find for the defendant."

When you have arrived at a verdict, you will select the form that meets it, and cause it to be signed by one of your number whom you will select for that purpose as foreman, and then all of you will return it into court. You may take to your room where you deliberate the complaint and its amendments, the answer, the exhibits, and these instructions and the forms of verdict. The case is with you, gentlemen.

The jury afterwards came into court and asked a question to which the court, in the presence of counsel, replied as follows:

You may determine, of course, by a preponderance of the evidence, as it may warrant, the question as to who was responsible for the actual collision, and who was responsible for the killing of the child; but no verdict, save one of the two given you, can be rendered in the case, under the instructions given you comprehended in the term, "the last clear chance to avoid the injury." After those instructions, gentlemen, I think you ought to be able to determine this case, and the court will send you back for a further time. I will take any paper you have and see whether I choose to say anything further to you. (After examining the paper handed by the jury.) That question, gentlemen, as asked now has been fully answered in the instruc-

Morales v. San Juan Light & T. Co.

tions already given you, and a careful reading of them will show you that fact. The court then read the question asked by the jury, as follows: "If we find that it was an unavoidable accident as far as the collision goes, but find that improper appliances on the car, or the handling of these appliances, was the cause of the killing the child, would the law require us to find for the plaintiff or the defendant?" And further instructed them as follows:

In answer to the question asked and just read, the court instructs you that if, after the motorman saw the carriage and its occupants on the track, he could, if his car had had proper appliances, have avoided killing the child, you should find for the plaintiff.

The jury: Your honor, you say that you instructions are very clear. They talk about accidents. We desire to distinguish the accidents, because, in the instructions, it seems that there were two accidents, and whether we are to consider one or two accidents independent of the other.

The court: Those matters are entirely for the jury. The transaction is one entire transaction, and with the instructions now given you the court thinks you ought to be able to decide the case. The court won't instruct any further than that. There are but two forms of verdict to be rendered in the case, and, if you will read the instructions from beginning to end, you ought to be able to agree upon a verdict.

Whereupon the jury retired to further consider of their verdict. Thereafter they returned a verdict for plaintiff in the sum of $1,500.